May it please the court. My name is Donald Kilmer and I represent the appellants in this matter. Seated at council table with me is Donald B. Cates and several plaintiffs, specifically Sally Nordyke and Virgil McVicker in the audience as well, Your Honor. Very well. Before I begin my prepared remarks, I'd like to place before the court an important contextual reference point. California is only a handful of states that has no right to keep and its state constitution. That means that whatever protection the citizens of the state of California have with respect to a right to keep and bear arms will come only from the federal Bill of Rights. In other words, the decision of this court may well set both the maximum and minimum scope of the right to keep and bear arms, at least with respect to California. I'm not sure how that will impact your incorporation argument, but I certainly understand what you're saying. Yes, Your Honor. I have prepared remarks, but I'm also prepared to have the court ask questions or I can begin with prepared remarks. Well, I'm sure we'll have questions, counsel. Just go ahead with your presentation. Thank you, Your Honor. I'm here today to ask the court to reverse the decision of the trial court and find the Alameda ordinance in question unconstitutional as applied to the facts of this case on any one of the following theories, either the First Amendment under Texas v. Johnson, under the Second Amendment based on the recent Supreme Court case under Heller, also under a 14th Amendment equal protection analysis, Your Honor. We're not here to challenge any federal or state laws. We've been almost shrill in our declarations about our compliance with federal and state law in this case, and the county has conceded that the gun shows comply with all state and federal laws with regard to the possession of firearms and with regard to the sale of firearms. Well, now, with summary judgment now, which we are, Your Honor, ruled against you on that, the threshold question, of course, is whether the O'Brien test applies or not. What is your contention on that? Your Honor, if the O'Brien test does apply, then this case really hinges on the first and fourth prong of the O'Brien test, which would be, number one, whether or not the county is engaged in permissible regulation at all, and number four, whether or not that regulation exceeds the ability of the county to address the evil that it wants to address, which is why we argued in the trial court that the proper case to apply here is Texas v. Johnson. But you're not saying, are you, which would implicate O'Brien, that this ordinance, which is a gun possession prohibition on county property, you're not saying that that is aimed at First Amendment free speech rights, are you? Not on its face it's not, Your Honor. But what we, the court may recall that we were before this court once before in a facial challenge, and then we went back to the trial court to conduct discovery and then proceed with an as-applied challenge. Our position would be that as applied, this ordinance ends up banning gun shows and therefore banning the speech associated with gun shows, which is a fact that the county has already conceded and which the trial court found that possession of a gun at a gun show is likely to convey a message and likely to be understood by the people, the intended audience. Once we met that threshold, our position is that the case had to be analyzed under Texas v. Johnson and the strict scrutiny that flowed from that. But I thought O'Brien required that there be some indication that the challenged legislation must be aimed at speech. There's nothing in the ordinance that is aimed at the right to bear arms or any activity other than position on county property, isn't that right? Well, Your Honor, the county specifically regulates expression with guns when it went into the business of, for instance, finding an exception for possession of guns for motion pictures, theatrical productions and television events. So the county is conceding even within its own ordinance, but expression with a gun can take place by possessing the gun. All right. With respect to that exception, exception number four, the possession of a firearm by an authorized participant in a motion picture, television, video, dance or theatrical production or event. I was struck by the word event. Would you qualify perhaps under exception number four as an event, a gun show, so long as you met the requirements that the guns be secured and that sort of thing? Well, Your Honor, I would respond to that in several ways. Number one, the county has never interpreted that exception to apply to the gun shows in correspondence with county council's office before and during the initial stages of this lawsuit. I specifically requested an interpretation of the ordinance by county council. Would we fall under an exception? Would we be able to continue to have gun shows? Unfortunately, the county never responded to my letters, but they did write letters to the county fairgrounds manager and explained to him that the ordinance met that no guns could be displayed at a gun show. And I believe in the joint statement of undisputed facts, it's conceded by the county that county council is the correct body to interpret this, the ordinance. They made a finding that we couldn't have guns at a gun show. To follow up on Judge O'Scanlan's question, didn't the county or didn't the fairgrounds ask what kind of plan you would have to use the facility? Yes, Your Honor. We responded with a letter saying that, number one, we saw no requirement in either our contract or in the ordinance to submit a plan. However, we did say that we were prepared to comply with all state and federal laws. And it's important to note that the Gun Show Enforcement Act of 2000 specifically contains a provision for possession of guns at gun shows as long as they're secured. And the county has conceded all along that we have complied with the Gun Show Enforcement Act of 2000. We have always had our guns secured at these gun shows. If the county wants to now, eight years later, make an argument trying to moot the case, I don't have a response to that. The problem is that the ordinance has always been interpreted to exclude guns at gun shows, therefore making gun shows, I believe in the language of the California Supreme Court, virtually impossible. Do you want to say anything about the equal protection claim? It's also implicated in the summary judgment. Yes, Your Honor. Under the equal protection argument we have is that even if the case has to be analyzed under the lesser or deferential standard of O'Brien, we are still talking about First Amendment activity. And at that point in time, once we're still talking about expressive conduct, the county still cannot engage in an unequal application of the law. In this case, it wasn't discovered until after we went back to the trial court that the Scottish games were allowed to take place at the fairgrounds. And they were allowed to bring firearms onto the fairgrounds for their expressive activities, which included, I believe, mock battles and recreation of historical battles. So under an equal protection analysis, what has happened is the county has set up classes of citizens, basically, who can possess firearms at the fairgrounds, the Scottish games and gun shows. And they've excluded gun shows when there's no rational basis for doing so. But there's no express exclusion of gun shows. There is an express exception for an event like the Scottish games. Yes, Your Honor. And we have always maintained, at least with respect to the facts of this case, that if this ordinance had contained an exception for gun shows, we wouldn't be here. All right. Well, you might want to get into your incorporation analysis then. This may be the first case since Heller which has to resolve the question as to whether the Second Amendment rights are incorporated against the States under the Fourteenth Amendment. Well, Your Honor, our position is that basically footnote 23 of the Heller decision could be almost construed as an engraved invitation to address the issue. I believe that the Heller court basically said that with respect to the Cruikshank's continuing validity on incorporation, that the court noted that Cruikshank also had said that the First Amendment didn't apply. But I think it's important to understand the historical context. Cruikshank, Presser and Miller v. Texas were all cases that dealt with whether or not the Second Amendment applied to States before there was an incorporation issue. And what those courts said was that a privileges and immunities clause wasn't applicable. And of course, modern incorporation arose during the 1930s under the due process clause of the Fourteenth Amendment. And our position is that under Duncan v. Louisiana, that the right to keep and bear arms is one of those fundamental rights necessary to American justice. Well, now footnote 23 literally says, with respect to Cruikshank's continuing validity on incorporation, a question not presented in this case. We note that so-and-so. So the Heller does not deal with incorporation. It doesn't deal with incorporation, Your Honor, mostly because the case arose in the District of Columbia, which is a federal enclave. And so it wasn't presented on the facts. But it did say that the footnote went on to say that the first it noted that Cruikshank also did not apply the First Amendment against the States and did not engage in the sort of Fourteenth Amendment inquiry required by our later cases. What we're asking this court to do today is to engage in that Fourteenth Amendment inquiry under Duncan v. Louisiana. And how can how can we do that in light of our three-judge panel decision in the Fresno case, which cited Duncan? It did cite Duncan, Your Honor. And Duncan was a due process case. I would agree, Your Honor. But are we bound by that case? No, you're not. Because we cited in our briefs that a three-judge panel is entitled to revisit another three-judge panel if a superior court, the U.S. Supreme Court in this case. And we believe that Heller has severely undermined the rationale of By saying it didn't reach the issue of incorporation and they've undermined it? No. What I believe is that this what has to happen is that this court has to engage in an analysis similar to what the Supreme Court did in order to find out whether or not the prior three-judge panel's decision can be overturned. In the Fresno case, there's a basically a toss-off line, a one or two-line mention about Duncan v. Louisiana. And what that court said was that they found that only total incorporation of the Bill of Rights has been continually rejected by the Supreme Court of the United States. We're not asking today for total incorporation. We're simply asking this court today to engage in the 14th Amendment analysis required under Duncan v. Louisiana. And it's clear from the Fresno decision that that court didn't engage in that kind of analysis. And therefore, the case law in the Ninth Circuit about three-judge panels visiting other three-judge panel's decision means that you can now use the reasoning of Heller to take a fresh look at what the court did in Fresno. So you're arguing that Fresno didn't do the due process selective incorporation analysis that we now do in modern interpretation of incorporation issues? Not only did it not do the due process incorporation analysis, the case was almost totally about a privileges and immunities analysis. The case, the court in Fresno primarily took a look at Cruikshank, Presser, and Miller v. Texas. And Mr. Kilmer, Judge Gould with a question. On the incorporation issue, would you say that Heller, that Heller itself, at least in dicta, says that the selective incorporation doctrine under the Palco case is the right test to decide whether or not there's incorporation? I would agree with that, Your Honor. In fact, it may be the only test because the United States Supreme Court has not overruled the slaughterhouse cases. So we cannot, at this point in time, pursue a privileges and immunities analysis. Although I believe there are several amicus briefs that were filed that encourage that kind of analysis. Okay. Then if you look at our Miller v. Gammie decision, can we say that Fresno is clearly irreconcilable with Heller if it's irreconcilable with a court when Heller didn't reach the question? Yes, Your Honor. I believe that Heller permits this court to take a completely fresh look at the issues that were addressed in Fresno. Well, counsel, even if we were to be persuaded that there is incorporation, you still have to get to the merits. What is it that brings you within Heller in terms of the conduct here? We're not talking about prohibition of guns in the home. We're not talking about the use of a gun for self-defense. We're talking about the mere possession of guns on county property. And it seems to me that that kind of ordinance is valid. Justice Scalia says, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings. Why isn't this within the government building exclusion under Heller? I have several responses to that, Your Honor. Number one, the sensitive places doctrine obviously precedes the ordinance. But also, the county doesn't define and has not acted like the fairgrounds are a sensitive place with respect to the possession of guns. They have let the Scottish games take place there since they passed the ordinance. So it's not possession of guns that makes the county fairgrounds a sensitive place. And we also have California statutory law, I believe, penal code section 171B, that specifically exempts government buildings where gun shows take place. I believe the citation is in our brief. Also, the sensitive place doctrine that's set forth in Heller talked about schools. We don't have schools here. And we certainly don't have felons or illegal sales of firearms taking place. Well, I thought this ordinance was... Oh, excuse me. Go ahead, Judge. Well, what I was going to ask, it's in the same light of Judge O'Scanlan's question, but a slight different issue. That is, given that amendment was not permitted, should we now make a decision whether this is a reasonable regulation of firearms? Assuming there's incorporation, assuming the question is, is it reasonable? Should we be making that decision or should we just tell the district court, you should be allowed to amend your complaint in the light of Heller and then let matters proceed in the district court on a motion to dismiss or a motion for summary judgment so that we are reviewing a district court opinion on the issue rather than taking a first shot at it? I believe both parties addressed that issue in their briefs, Your Honor. And I believe that one of the things that we agree on is that this court has enough information now, having the ordinance in front of them, and sufficient facts that were developed for the First Amendment causes of action to decide the Second Amendment issue. But as a purely procedural matter, under the Federal Rules of Civil Procedure, the Second Amendment cause of action is only here on a denial of a motion to amend. In which case, if the court finds that that order was wrongly entered and wants to send us back to say, now, go engage in your pleadings contest and come back to us on a motion to dismiss, I suppose that is a procedurally proper basis. But I believe both sides have conceded that the court can decide that case now. And would you plead anything different in the light of Heller than the complaint that you tendered earlier? I'm not sure I understand the question. In your earlier motion for leave to amend, you had a Second Amendment claim that was not permitted. My question is, if you were now permitted to amend in the light of what the Supreme Court said in Heller, would you plead anything differently? No, I would not. I believe that the ordinance is probably facially invalid and it is invalid also as applied to our gun shows. Counsel, you're down to about one minute. Do you want to reserve? I'll reserve that. You may reserve. All right. We'll hear from the Court. Good afternoon. May it please the Court. Would you identify yourself for the record, please? Yes, Your Honor. I'm Peter Pierce, and I represent the Respondent of the Appellee County of Alameda. With respect to the First Amendment issue, the Court has raised the question of whether or not the standard in Texas v. Johnson applies. It does not apply here, because the County's interest in regulating the possession of firearms on its own property is not related to the suppression of free expression. The Texas v. Johnson case was a flag-burning case, as the Court will recall. And in that particular case, the interest asserted by the State of Texas protecting public safety was implicated only when the act of expression was occurring, the burning of the flag. Contrast that with what is going on here. The County's interest in protecting public safety and in curbing violence on its own property is furthered, regardless of the message that the plaintiffs may be trying to convey when they possess firearms on County property. And so, the interest of the government here is not directly related to the suppression of free expression, which means it is the O'Brien analysis that the district court properly used. I suppose their argument is it's incidental. It may not be expressly set out, but the impact, the effect, is to chill their First Amendment rights. Well, the O'Brien court recognized that when speech and non-speech elements are involved in the same course of conduct, which is what is going on here, we use the less restricted four-prong O'Brien analysis. And my opposing counsel has argued that prongs one and four are not met here. The first prong is whether or not the county has the constitutional authority to adopt this type of regulation. The only argument that the plaintiffs have asserted that it does not in their brief is that it was adopted for a nefarious purpose or the underlying motive of the regulation to determine its constitutional validity. Mr. Kilmer also challenged on First Amendment grounds under the O'Brien test the fourth prong, which is whether or not the regulation leaves open ample alternative channels of communication. And I note for the court that in the third amended complaint, which was the operative pleading in this case, there were 16 reasons why the plaintiffs said they wanted to put on their gun show on county-owned property. Fifteen of those 16 reasons are not even implicated by the prohibition on firearms. It was only arguably that the sale of firearms, one of 16 reasons the plaintiffs said they wanted to conduct gun shows, was implicated. So that would seem to tell us that the plaintiffs can conduct their gun shows for the purposes they've asserted in their third amended complaint with this ordinance in place. Now, is that with respect to exemption number four, would that fit within four as an event? Except for the sale, would the rest of the demonstration and the showing fit within that exemption? If the plaintiffs wanted to conduct a gun show that fit within the exception, they could. And that is why they were requested by the general manager of the county fairgrounds to submit a written plan to show the county, the general manager of the county fairgrounds, that they could conduct their event under the terms of the exception. Now, the exception requires that only authorized participants in the event possess the firearm. And when the firearm is not within their immediate possession, that it be secured to prevent unauthorized use. If the plaintiffs could conduct their gun show under those terms, they would be allowed to use it on county property. Unfortunately, we never found out from the plaintiffs whether or not they could do so because they didn't submit a written plan. But I assume from your earlier remark that in any event, no sales would be permitted under this ordinance. Is that right? No, Your Honor. That is not the case at all. The ordinance prohibits only the possession of firearms. It has been the county's possession all along that plaintiffs would be free to engage in the sale of firearms. But the plaintiffs responded by saying, that's impossible. You can't sell a firearm without having the firearm present on the county fairgrounds. It was the plaintiffs that made that determination. But the ordinance on its face does not prohibit the sale of firearms. Turning to the equal It seems strange to me to say that you can have a gun show without showing of guns. How did the ordinance take care of that? How could they have shown their guns without bringing them to the campground? Point taken, Your Honor. But I do not think that it can be assumed as a matter of law that a sale could never occur without the gun being physically present there. The sale could be consummated there and perhaps an individual could view the firearm immediately off the government property. I suppose that is a possibility. That's my response to the question. With respect to the equal protection claim, there has been no unequal application of this ordinance as between the plaintiffs and the Scottish Games. If the plaintiffs could hold an event that falls within the exception to the ordinance, they would be allowed to have that event. The Scottish Games holds an event that falls within the exception to the ordinance. Furthermore, the Scottish Games and plaintiffs are not similarly situated. The Scottish Games holds an event where only authorized participants in the event can possess a firearm, and the firearm must be within the immediate possession of the authorized participant. When it is not, it must be secured. Plaintiffs have not furnished a written plan as to how they would go about falling under that exception, but if they wanted to, if they wish to conduct a gun show, they could under that exception. It also bears noting that the Scottish Games could not conduct the type of gun show that plaintiffs apparently want to conduct, where all of these hundreds and thousands of firearms are brought on to Unless the court has any questions with respect to the First Amendment and equal protection issue, I will move on to the second. You may proceed, counsel. Thank you, Your Honor. Before the court reaches the incorporation question, it seems appropriate to ask whether a Second Amendment right is even implicated on the record before this court. We know after Heller that there is a Second Amendment right to possess a weapon for self-defense in the home. We also know after Heller that the Second Amendment right is not unlimited. We know that it does not allow an individual to possess a firearm for confrontation in any place, in any manner that Your Honor, our response is that the county fairgrounds is a sensitive place and that determination can be made based on the record before this court. The first undisputed fact in the Statement of Undisputed Facts before the District Court, and this is at page 436 of the record, was that on July 4th, 1998, the year prior to the adoption of this ordinance, there was a shooting on the county fairgrounds that injured eight people and there were many others who were injured in the resulting melee. Also undisputed is the fact that many public events are held on the county fairgrounds. Furthermore, pursuant to the condemnation order in 1965, by which the county took fee title to the property, it is required that the property be used for a public purpose. Also, with respect to the plaintiff shows, there is no dispute, this is fact undisputed fact number 35, that plaintiff shows involve thousands of firearms being brought on to public property and that at least 4,000 individuals attended their gun shows. Based on those undisputed facts, it would seem that the county fairgrounds is a sensitive place that falls outside of the reach of the Second Amendment as construed in Heller. Another reason why the Second Amendment is not even implicated here is because the Heller majority recognized that the core of the Second Amendment right is the right of self-defense. There is not a word in the record that any plaintiff wishes to bring a firearm onto county property for the purpose of defending himself or herself. Counsel, Judge Gould, I have a question for you on that. Yes, Your Honor. Actually, two related questions. The first is, if individuals, as Heller says, have a right to bear arms for self-defense, don't they necessarily have to have a corollary right to buy the firearms, to buy them somewhere? And then second question, does the record that was made on the First Amendment issues tell us what opportunities are available to buy firearms in places other than the gun shows on county property? Your Honor, with respect to the first question, is there a corollary right that ensues from Heller, a right to buy firearms? Heller's language does not lead to the conclusion that there is such a corollary right for several reasons. First of which is that Heller recognized that regulation of the sale of commercial firearms is presumed valid, and therefore it would seem that those regulations on the sale of firearms fall outside of the reach of the Second Amendment, as that's the current state of the law. Secondly, the county ordinance does not restrict the sale of firearms, as I had mentioned earlier. I wasn't quite sure. I didn't really understand your question with respect to the First Amendment, Your Honor. I'm sorry. Well, does the record that was made on the First Amendment claim tell us what opportunities people have to buy guns other than at a gun show? Other than at a gun show? No. But gun shows can be held, I would note, on private property within Alameda County. I think there are two undisputed facts in the record, fact 33 and 34, which are found at page 444 of the record that bear, I think, indirectly in response to Your Honor's question. Fact 33 was that the Nordykes held multiple gun shows in California in 2005, and fact 34 was that there were 22 gun shows in California in 2005. So those gun shows would have presumably provided an opportunity for the purchase of firearms. Thank you. So it is the county's position that before the court can even reach the incorporation question, it must be decided whether or not the right implicated here is even a right at all under Heller. And because the right the plaintiffs are asserting here, a right to possess firearms on public property, is not a right that's even recognized in Heller, and on the state of the law, is not a Second Amendment right at this point, the incorporation question need not be reached. Well, if we're not persuaded by your sequence, in other words, we alternatively might reach incorporation and then get to the merits, you may want to talk about the incorporation issue, just to help us. Yes, it is the county's position that this court is bound by precedent to conclude that the Second Amendment is not incorporated against states in their political subdivisions. You're relying on Fresno for that? I'm relying on Krupschank, Presser and Fresno. This court in Fresno Rifle recognized that Krupschank and Presser held that the Second Amendment is a constraint only upon the actions of the federal government, and does not constrain state or local action. Plaintiffs in the Fresno Rifle case raised the argument that in Krupschank and Presser, the incorporation issue was not addressed, and that is true. Nevertheless, this court in Fresno Rifle rejected that argument and said until the Supreme Court overturns Krupschank or Presser, the lower courts are bound by those decisions and must conclude that the Second Amendment is not incorporated. Also advanced in the Fresno Rifle case was the argument that there had been intervening Supreme Court authority. In that particular case, the plaintiffs said that the Supreme Court case of the United States against Verdugo- Urquidez could be cited for the proposition that the Second Amendment conferred an individual right to bear arms. This court in Fresno Rifle rejected that argument and said, be that as it may, even if the Second Amendment is conferring an individual right, we are still bound by Krupschank and Presser. And that is one of the arguments that the plaintiffs advance here. I think it is very difficult, if not impossible, for this court not to follow the Fresno Rifle precedent. And as Judge Gould astutely observed the Miller v. Gamme precedent, the test for whether or not one panel of this court may depart from a prior panel is whether or not the intervening Supreme Court authority, in this case Heller, has issued a decision that is clearly irreconcilable with the prior panel decision. And I think it is a stretch to say that Heller is clearly irreconcilable with Fresno Rifle. Heller does not purport to overturn Krupschank. Heller makes the comment in footnote 23 that Judge O'Scanlan referred to earlier, but that is not a purported overruling of Krupschank. Krupschank remains good law until the Supreme Court says otherwise. And it would only be speculation as to how the Supreme Court might rule if it chooses to address that question in the future. Notwithstanding the literal text of footnote 23, the entire rest of the opinion seems to dwell enormously on such considerations as whether or not the right to bear arms is deeply rooted in United States history and tradition. And cites, going back to 1689, the fundamental right to bear arms that was recognized as a right of Englishmen. Well, I should be careful. Only Protestant Englishmen. I wouldn't have been eligible for it. But in any event, it was fundamental to that tradition which, of course, we've inherited. So what's going on in Heller? Why we know about footnote 23, but then you see this entire multi-page historical analysis which seems to establish the fundamental rationale under which we now look at the question of whether these rights are incorporated. Well, Your Honor, I think that discussion would bear upon whether or not the right to possess a firearm in the home for self-defense is a fundamental right. But it seems to me an entirely different question on this record, whether the right to possess a firearm in any location at all, and in this case on public property, is a fundamental right. I think that would be a separate question. And it would seem to me that a holding that the right to possess a firearm in any location one chooses, including public property, is fundamental, meaning it is necessary to a regime of ordered liberty, wouldn't seem to follow. Because of the development of the common law in this country, states historically have regulated public safety with respect to their own property. It was recognized by the Supreme Court. Well, in Heller actually. Heller cited Krupschank and did so for the observation that the states were free to restrict or protect the right, referring to the Second Amendment right, under their police powers. Well, suppose this were the District of Columbia instead of a county of a state, what would the answer be? Whether the right is incorporated? Well, what I'm trying to do is put Heller in the context of this case. Obviously, Heller was a statute which prohibited possession anywhere within the district. So that was an absolute ban on possession anywhere, not the limited ban that we have here in Alameda County in this case. But suppose a total ban were at stake in this case, which it is not. But suppose it were, just for the sake of discussion. Yes, Your Honor. What would the answer be? I think the answer still would be no, Your Honor. And the primary reason for that is whether or not a right needs to be recognized in order to further the regime of ordered liberty would seem to depend on whether or not... Didn't you just distinguish the right to have the arms in the home or for purposes of self-defense? Didn't you just distinguish that a moment ago as saying is that that right is not implicated on this record, that what is crucial to the holding in Heller was the possession of a weapon for self-defense in the home? Exactly. So my question then comes back to why shouldn't, if we had the Heller statute in the State of California, why shouldn't that interpretation be incorporated? Because, Your Honor, the Second Amendment, Judge Gould made reference in his concurrence earlier in this case that whether the Second Amendment is incorporated or should be incorporated against the states might depend on whether or not the Second Amendment was animated by a fear of federal tyranny or whether what animated the Second Amendment and propagated its adoption was a fear that states would disarm citizen militias. And I believe Heller speaks directly to that when Heller says at page 2801, the threat that the new federal government would destroy the citizens' militia by taking away their arms was the reason that right, unlike some other English rights, was codified in a written constitution. So Heller seems to recognize that it was a fear or a concern about federal tyranny that drove the adoption of the Second Amendment, not a concern that the states themselves would disarm citizen militias. In fact, there were statutes at that time, Your Honor, which several states had statutes providing for the arming of their citizen militias, Pennsylvania, Virginia. Thank you, Counsel. Your time has expired. Thank you very much. Thank you, Counsel. Mr. Kilmer, you have about a minute. Thank you, Your Honor. First, we are not here asking the court for permission to carry guns anywhere in the county or anywhere on county property. We're asking to hold traditionally law-abiding gun shows at the fairgrounds where they've taken place for 10 years without incident. We're asking to be allowed to comply with federal and state law. And California state law is very... Well, in terms of compliance, you heard what Mr. Pierce had to say. Why don't you fit within exception number four? Mostly because, Your Honor, when we specifically asked the county in correspondence before, that occurred before the lawsuit was filed... Well, they say you didn't give them a plan. Well, actually, Your Honor, the person who requested the plan was the fairgrounds manager after county counsel had told fairgrounds manager, in correspondence that's in the record, that a gun show can take place as long as there are no gun shows present. Guns present. Excuse me. Correct. No guns. If there are no guns displayed or present. They went on to say gun sales could take place as long as no guns were present. I think that the county is reading the exceptions even broader than even they have enforced it. The only other thing I have to say, Your Honor, the county has already taken steps to control deadly weapons at the fairgrounds. They have metal detectors there for the county fair, which is where the horrendous shooting took place. It's important also, Your Honor, there are two places where firearms dealers, they lawfully sell firearms in the state of California. And that is at their store or at a gun show. And the is that if the government engages in a substantial interference with access to the right, then it is engaged in unconstitutional conduct. Thank you, counsel. The case just argued will be submitted for decision and the court will adjourn.
judges: Alarcon, O'scannlain, Gould